# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ROBERT C. REYNOLDS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-930-MJP<br><br>REPORT AND RECOMMENDATION |

Plaintiff Robert C. Reynolds appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 37 year old man with two years of college education. Administrative Record ("AR") at 42. His past work experience includes employment as a courtesy clerk, office clerk, hotel clerk/auditor, room cleaner, termite secretary, office work/administrative assistant and receptionist, warranty manager,

REPORT AND RECOMMENDATION - 1

administrative assistant, and maid assistant. AR at 165. However, plaintiff has "not engaged in substantial gainful activity since March 27, 2006," the date of his application for SSI payments. AR at 20, 78. Plaintiff asserts that he is disabled due to disorders of back (discogenic, degenerative), bipolar, depression, visual and auditory hallucinations, and panic attacks. AR at 78, 136.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 18. Plaintiff requested a hearing which took place on March 3, 2009. AR at 37. On March 30, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 34. Plaintiff's administrative request for review of the ALJ's decision was denied by the Appeals Council, AR at 1, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 9, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Reynolds bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On March 30, 2009, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since March 27, 2006, the application date.

2. The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease of the spine, hepatitis C, depression, anxiety disorder, personality disorder, cognitive disorder, and substance abuse disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), meaning he is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amounts. The claimant is able on an occasional basis to climb ramps and stairs, but never ladders, ropes, or scaffolds. He is able occasionally to balance, stoop, kneel, crouch, and crawl. He has no manipulative, visual, or communicative limitations. He must avoid concentrated exposure to vibration. The claimant is able to understand, remember, and carry out simple instructions and would have an average ability to perform sustained work activities (*i.e.* able to maintain attention and concentration, persistence, or pace) in an ordinary work setting on a regular and continuing basis (*i.e.* 8 hours per day for 5 days a week or equivalent work schedule) within customary tolerances of employers' rules regarding sick level [sic] and absences. The claimant is able to make judgments commensurate with the functions of unskilled work, *i.e.*, simple work related decisions; to

respond appropriately to supervisors, co-workers, and work situations; and to deal with changes all within a routine work setting. The claimant is unable to deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact with the general public is not precluded.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1971 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 27, 2006, the date the application was filed.

AR at 20-34 (emphasis in the original).

## VI. ISSUE ON APPEAL

The principle issues on appeal are:

1. Did the ALJ err in evaluating the medical opinions of James Czysz, Psy.D., Elizabeth Koenig, M.D., and Pamela Ridgway, Ph.D?

2. Did the ALJ err when he failed to give any reasons for rejecting the opinion of M. St. Clair, M.D. that plaintiff would have to change positions frequently?

Dkt. No. 17 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VII. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Opinion Evidence

#### 1. Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. *James Czysz, Psy.D.*

In a January 2006 evaluation for the Department of Social Health Services ("DSHS"), Dr. Czysz diagnosed plaintiff with schizotypal personality disorder, depression NOS, cognitive disorder NOS, secondary to brain damage following suicide induced coma (as reported by client), and opiate dependence in remission. AR at 257-60. He found plaintiff with marked limitations in several cognitive and social factors. Specifically, plaintiff was found to have difficulty in following complex instructions, exercising judgment to make decisions, and performing routine tasks. *Id.* He was also found markedly impaired in his ability to interact appropriately in a normal work setting with co-workers, supervisors, and with the public. *Id.* Dr. Czysz found plaintiff markedly impaired in these areas because plaintiff scored in the 10th percentile on the Trailmaking Tests of attention and concentration, and was only able to recall "one of three words after a short delay according to the Folstein Mini-Mental State Exam. *Id.* In addition, plaintiff scored "severely depressed" on the Beck Depression Inventory (BDI).

AR at 259. Dr. Czysz also determined that plaintiff's "capacity to manage funds is poor." AR at 260.

On November 29, 2006, Dr. Czysz saw plaintiff a second time. AR at 417-29. Plaintiff "was administered 13 subtests of the *Wechsler Adult Intelligence Scale – Third Edition* (WAIS-III)." AR at 420-22. Specifically, these tests yielded reports on plaintiff's general intellectual ability, verbal and performance abilities, working memory abilities, processing speed abilities, and general memory. AR at 422. Plaintiff scored in the 8th percentile of his age-mates on the Processing Speed Index (PSI) of the WAIS-III, which measures "an individual's ability to process simple or routine visual information quickly and efficiently" as well as an individual's ability to "quickly perform tasks based on that information." AR at 422. Scoring in the lower 10th percentile on the General Memory Index, plaintiff also portrayed significant difficulty in "consolidat[ing] material, stor[ing] it in long term memory, and retriev[ing] it for later use." AR at 423. However, plaintiff scored in the high average range in intellectual functioning, very superior on his working memory index, and above average in the verbal comprehension index. *Id.* Therefore, Dr. Czysz concluded that, "relative to his overall intellectual functioning," Mr. Reynolds has lower capabilities in immediate and delayed memory. *Id.*

Dr. Czysz described his patient as being "quite labile" and "often tearful in the session." AR at 420. Furthermore, "the manner in which [plaintiff] described his symptoms [of anxiety, obsessive/compulsive behavior, and psychosis] often had a hysterical, dramatic quality." *Id.* In addition to the WAIS-III, the doctor also performed the REY 15 Item Test of Malingering ("REY 15"), which helps assess credibility in a patient's answers and whether patients are "attempting to dissimulate or exaggerate [their] level of cognitive impairment." *Id.* On this test, plaintiff scored 15 out of 15, indicating that plaintiff did not exaggerate his

REPORT AND RECOMMENDATION - 9

symptoms. *Id.* There was also no evidence of malingering during the evaluation as a whole. *Id*. According to plaintiff's behavior as observed by Dr. Czysz and according to the REY 15, plaintiff's manner was not due to malingering, but "to his generally histrionic personality disorder." *Id.* Upon determining that Mr. Reynolds displayed a histrionic, obsessive compulsive, and schizotypal personality style and symptoms of depression, anxiety and psychosis, Dr. Czysz further noted that plaintiff's "ability to interact in even a minimally appropriate manner with coworkers, supervisors, or the public is quite impaired." AR at 423.

On plaintiff's functional loss indicators worksheet, Dr. Czysz indicated problems in many areas. AR at 425-26. For example, plaintiff experiences his "speed, accuracy, productivity or quality of work significantly decline over a work shift." *Id.* Apart from his poor performances on the General Memory and Processing Speed Indexes of the WAIS-III, Mr. Reynolds also reported that he "would be found under [his work] desk sobbing and thinking that people were trying to kill [him]." AR at 419. Mr. Reynolds was also given a Personality Assessment Inventory (PAI) during which he was observed to have behavior consistent with obsessive compulsiveness and indecision.[3] AR at 422. Dr. Czysz gave plaintiff a GAF[4] score of 35. AR at 424.

---

[3] The results of the PAI test itself were deemed invalid by the examiner due to inconsistency. AR at 422.

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family

1    The ALJ addressed the testing in two separate sections of the opinion. First, he
summarized the test results, and as to the results of all of the tests, simply stated "I agree that
the claimant has significant cognitive impairment and find that Dr. Czysz's findings in this
regard are consistent with the claimant's residual functional capacity." AR at 29. On the next
section of the opinion, he assigned limited weight to Dr. Czysz's January and November
evaluations claiming in part that Dr. Czysz based his conclusions "in large part" on plaintiff's
self-reports. AR at 30.

The ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr.
Czysz's opinions. First, to state that the Dr. Czysz's assessments were due "in large part" to
plaintiff's self-reporting is tantamount to ignoring the extensive testing conducted by Dr.
Czysz. Second, the ALJ suggests that plaintiff's activities were inconsistent with Dr. Czysz's
conclusions regarding speed, accuracy, productivity and quality of work. However, there is
nothing in the record to support this statement. Third, while some inconsistencies in other
areas exist, an ALJ is not entitled to cherry-pick isolated findings to support a desired
conclusion when specific tests have been conducted that dictate an opposite conclusion.
Although the test results are not conclusive, an ALJ is not allowed to simply disregard them,
and this is what was done. The ALJ rejected the opinions of a twice evaluating physician, and
failed to provide specific and legitimate reasons for doing so. This requires remand.

### 3.   *Pamela Ridgway, Ph.D.*

On October 27, 2003, plaintiff was evaluated by Pamela Ridgway, Ph.D., for the
DSHS. AR at 254-56. He was observed crying uncontrollably in the waiting room. AR at
255. At the time of the evaluation, plaintiff had "most recently treated with Effexor and

---

relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is
considerably influenced by delusions or hallucinations" or "serious impairment in
communications or judgment" or "inability to function in all areas." *Id.*

Desiprimine."[5] AR at 254. During his appointment, plaintiff was "sad and labile" and admitted to "suicidal ideation, but denied current plan or intent." *Id.* However, he "obtained 29 of 30 points on the Mini-Mental State Exam," "recalled two of three words following a five-minute delay," and achieved within average range on an intellectual functioning assessment. *Id.* His PAI was dismissed on the grounds that he overreported his psychopathology and were likely "a plea for help" or "an extremely negative self-evaluation. *Id.* Nonetheless, when plaintiff's test results were adjusted to account for overreporting, "the following elevations remain[ed]: unhappiness, rumination, worry, physical signs of depression, compulsiveness, and rigidity, a poor sense of identity, physical complaints, and thoughts of death and suicide." *Id.*

Dr. Ridgway diagnosed "Major Depressive Disorder, Recurrent, Unspecified, Major Depressive Disorder, Recurrent with Psychotic Features versus Schizoaffective Disorder, versus, Psychotic Disorder NOS." *Id.* She deemed plaintiff "probably [unable] to meet the demands for competitive employment as this time. Specifically, it is unlikely that he would be able to appear for work on a consistent basis, and/or complete a normal workday without interruption from psychological symptoms." AR at 256. Plaintiff was given a GAF score of 40-45. *Id.*

The ALJ assigned limited weight to Dr. Ridgway's opinion because

> [o]n mental status examination, the claimant's mood and affect were sad and labile, and the claimant became tearful frequently during the interview. But the claimant was fully oriented, and he recalled two of three words following a five-minute delay. His intellectual functioning was estimated to be within the

---

[5] Effexor is an antidepressant that has a known side effect of "suicidal ideation and behavior" or "unusual changes in behavior" and "this risk may persist until significant remission occurs." PHYSICIANS' DESK REFERENCE 3022 (66th ed. 2012). "Desipramine has been reported to be associated with sudden death in several pediatric cases; therefore, its use has been abandoned for the management of pain in children." NEIL L. SCHECHTER ET AL., PAIN IN INFANTS, CHILDREN AND ADOLESCENTS 234 (2d ed. 2003).

REPORT AND RECOMMENDATION - 12

average range. These findings do not support disability. Furthermore the claimant's results from [the] Personality Assessment Inventory were considered invalid, due to "overreporting of psychopathology." Dr. Ridgway found this likely due to a "plea for help" and/or an extremely negative self-evaluation. She reported that, when the claimant's scores were computer adjusted for account for overreporting, it remained that the claimant's impairment resulted in unhappiness, rumination, worry, physical signs of depression, compulsiveness and rigidity, a poor sense of identity, physical complaints, and thoughts of death or suicide.

AR at 28-9.

Once again, the ALJ failed to comply with the standards for reviewing medical evidence set forth above. It is not clear what the ALJ is suggesting by insinuating that Dr. Ridgway apparently was unable to observe crying or a labile affect. Moreover, it seems apparent that the ALJ is substituting his views for those of a trained physician by suggesting that average intelligence functioning, alertness during a test and remembering two of three words rules out disability. Finally, the overreporting errors in the PAI test were detected by Dr. Ridgway and taken into consideration in her evaluation. This does not serve as a basis to reject the examining doctor's opinion. If there is a basis for rejecting Dr. Ridgway's opinions, it should be spelled out. It was not. On remand, the ALJ should reevaluate Dr. Ridgway's opinions in accordance with the standards set forth above.

### 4. *Elizabeth Koenig, M.D.*

Dr. Elizabeth Koenig, M.D., performed a psychiatric interview at the request of the Department of Disability Determination Services on August 21, 2006. AR at 380-86. She diagnosed him with bipolar affective disorder NOS, currently reporting euthymia; obsessive compulsive disorder with poor insight; alcohol use versus dependence in sustained full remission, by history; likely borderline personality disorder, and assigned a GAF score of 42. Her prognosis for plaintiff was poor:

> He continues to struggle with fairly rapid cycling mood swings and probably many of his difficulties relate to borderline personality disorder. I do think he has an Axis I bipolar disorder as well. At the time of interview he was relatively euthymic, but then he is depressed he is anergic and entirely unmotivated. He becomes suicidal and there is a high degree of hysterical behaviors and anxiety. I do think he is quite obsessional on a chronic basis and some of his other difficulties fluctuate….[H]e will likely have difficulty maintaining jobs long term, employment ending in dramatic fashion when he decompensates.

AR at 385-86.

The ALJ assigned limited weight to Dr. Koenig's opinion and GAF score assessment because the doctor gave "insufficient weight to her objective findings and too much consideration to the claimant's subjective reports." AR at 30. Specifically, "the doctor did not base her opinions on the claimant's actual presentation and performance on evaluation, but rather on his subjective reports of fluctuating mood." *Id.* In addition, the ALJ noted that claimant seemed to continuously report that he was in better shape on the date of examination than he normally was, implying his tendency to overstate his symptoms. *Id.* The ALJ found that plaintiff's alleged overstatements affected his overall credibility.

The ALJ's reasons for assigning limited weight to Dr. Koenig's opinion are not specific and legitimate. Contrary to the ALJ's assertions, plaintiff's mood swings are confirmed by evidence in the record. Specifically, plaintiff's fluctuating symptoms were also reported by other examining physicians, such as Dr. Combs and Dr. Czysz. Moreover, doctors reporting fluctuating symptoms in one report, and then not reporting them in other reports supports a finding of genuine mood fluctuations. *Id.* at 18. On remand, the ALJ should reevaluate the opinion of Dr. Koenig in light of the standards set forth above.

### 5. *State Agency Physicians*

The Commissioner asserts that the ALJ has discretion as "the final arbiter with respect to resolving ambiguities in the medical evidence." Dkt. 16 at 4 (*quoting Tommassetti v.*

REPORT AND RECOMMENDATION - 14

*Astrue*, 533 F.3d 1035 (9th Cir. 2008)). This is true. The ALJ also pointed out that his RFC findings were consistent with the opinion of State Agency medical consultant, Renee Eisenhauer, Ph.D. AR at 32-3, 430-33, 434-46, who evaluated his records, but did not see plaintiff, in January 2007. This non-examining, non-treating physician appears to be the only report that the ALJ relies upon. Dr. Eisenhauer does not comment, in detail, on the observations and findings of the treating physicians, but rather glosses over isolated comments. She does not comment on the fairly uniformly negative GAF findings, the obsessive compulsive, likely borderline personality findings by physicians who evaluated and tested plaintiff.

As noted above, although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33. If there is any independent evidence supporting the opinions of the State Agency Medical physician, it is not readily apparent in the ALJ's decision. Absent that evidence, the State Agency Medical physician's opinion does not amount to substantial evidence. This does not appear to be a case where there are substantial ambiguities in the record presented. The ALJ erred.

        B.      <u>The ALJ Erred in His Evaluation of Dr. St. Clair's Opinion</u>

Dr. M. St. Clair, M.D., performed a physical evaluation on December 30, 2005. AR at 261. Here plaintiff reported severe pain in his lower back which requires him to change positions constantly and that he could not sleep for more than half an hour due to his pain. *Id.* Plaintiff was diagnosed with current heroin use at a severity level of 5, lumbago and left sciatica at a level 3, as well as depression (as determined by the referring mental health

professional). AR at 263. With regards to mobility, agility and flexibility, the doctor also determined that the patient would have to change positions frequently. *Id.*

The ALJ briefly noted Dr. St. Clair's diagnosis provided a severe limitation for "current heroin use" and moderate limitations in lumbago and sciatica. AR at 28. In agreement with Dr. St. Clair's findings, plaintiff was found capable of "performing light work." *Id.* Regarding plaintiff's "ability to bend, crouch, kneel, push, pull, reach," the ALJ mentioned the doctor's note indicating "some restriction" and that plaintiff would have to change positions frequently. *Id*. However, the ALJ failed to deal with the restriction mentioned by Dr. St. Clair that as to physical limitations, plaintiff would have to change positions frequently. On remand, the ALJ should address this issue as well.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of March, 2012.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge